IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATHAN GILLIS,

               Plaintiff,

        v.

G. GRAMS, CAPT. ASHWORTH,
SGT. MORRISON, LT. LIND,
RICK RAEMISCH and JOHN DOES 1-5,

               Defendants.

OPINION and ORDER

09-cv-245-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff Nathan Gillis, a prisoner at the Columbia Correctional Institution, is proceeding on claims that (1) defendant Capt. Ashworth violated his right to due process by filing a false conduct report against him; (2) defendants G. Grams and Rick Raemisch violated his right to due process by ignoring his complaints; (3) defendant Lt. Lind violated his right to due process by holding an unfair disciplinary hearing; (4) defendants Grams and Sgt. Morrison subjected him to inhumane conditions of confinement in the DS-1 unit in violation of the Eighth Amendment; and (5) John Doe defendants destroyed plaintiff's religious items in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act.

1

Plaintiff has filed the following motions: (1) a motion for entry of default against defendants; (2) a motion for reconsideration of the February 11, 2010 order denying him leave to proceed on his retaliation claim against defendants Ashworth, Grams and Raemisch; (3) a motion for preliminary injunctive relief; (4) a motion to strike one of the affidavits submitted by defendants in opposition to plaintiff's motion for preliminary injunctive relief; (5) a motion for an independent inspection of the DS-1 unit; and (6) motion for clarification regarding the authorization for release of his medical records.  I will grant plaintiff's motion for reconsideration and allow him to proceed on his retaliation claim. Also, I will grant plaintiff's motion for clarification regarding the authorization for release of his medical records.  However, I will deny the rest of plaintiff's motions.

OPINION

A. <u>Motion for Entry of Default</u>

Plaintiff has filed a motion for default against all of the defendants, arguing that as of March 6, 2010, they had not answered his complaint as they were required to do by the December 14, 2009 order granting plaintiff leave to proceed on some of his current claims. However, plaintiff is mistaken about defendants' deadline to file an answer.  In the December 14 order, I explicitly stayed service of the complaint on defendants to give plaintiff a chance to supplement his complaint regarding some of his claims.  In a February

2

11, 2010 order, I granted plaintiff leave to proceed on claims against defendants Ashworth, Grams and Raemisch.  At that time, I ordered that the complaint and supplement be served on the defendants pursuant to the court's informal service agreement with the Wisconsin Department of Justice.  This gave defendants 40 days from the date of the Notice of Electronic Filing of the February 11 order to file their answer.  Defendants filed their answer on March 17, 2010, within the 40-day deadline.  Accordingly, I will deny plaintiff's motion for entry of default.

### B.  Motion for Reconsideration

Plaintiff has filed a motion for reconsideration of the February 11, 2010 order, in which I denied him leave to proceed on his claims that defendant Ashworth retaliated against him by filing a false conduct report and defendants Grams and Raemisch retaliated against him by ignoring his complaints.  Plaintiff clarifies his claim by stating that Ashworth filed the conduct report against him because plaintiff reported a correctional officer's beating of a fellow prisoner to Grams, Raemisch and the Columbia County Sheriff's Department, which conducted a criminal investigation.  Ashworth, Grams and Raemisch knew that plaintiff's allegations where supported by other witnesses but they retaliated against him anyway. With these clarifications, I am persuaded that plaintiff has alleged enough to support the drawing of an inference that defendants had retaliatory intent.  Therefore I will grant

3

plaintiff leave to proceed on his retaliation claim.  It appears that defendants have already answered plaintiff's allegations regarding this claim, so they need not file an amended answer.

### C. Motion for Preliminary Injunctive Relief

Plaintiff has filed a motion for preliminary injunctive relief seeking improvements to the conditions of confinement in the DS-1 unit.  "The granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it."  Roland Machinery Co. v. Dresser Industries, 749 F.2d 380, 389 (7th Cir. 1984).  The standard applied to determine whether a plaintiff is entitled to preliminary injunctive relief is well established:

> A district court must consider four factors in deciding whether a preliminary injunction should be granted.  These factors are: 1) whether the plaintiff has a reasonable likelihood of success on the merits; 2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; 3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and 4) whether the granting of a preliminary injunction will disserve the public interest.

Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989).  At the threshold, plaintiff must show some likelihood of success on the merits and the probability that irreparable harm will result if the requested relief is denied.  If plaintiff makes both showings, the court then moves on to balance the relative harms and public interest, considering all

4

four factors under a "sliding scale" approach.  In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997).  Thus, to obtain a preliminary injunction, a movant must first prove that his claim has "at least some merit."  Digrugilliers v. Consolidated City of Indianapolis, 506 F.3d 612, 618 (7th Cir. 2007) (citing Cavel International, Inc. v. Madigan, 500 F.3d 544, 547 (7th Cir. 2007)).

The parties have briefed the issues plaintiff raises in his motion and have filed supporting materials.  Defendants rely on the affidavit of Dylon Radtke, a Supervising Officer 2 at the Columbia Correctional Institution, in their response to plaintiff's findings of fact as well as their own proposed findings.  Plaintiff has filed a motion to strike this affidavit.  Plaintiff's only argument for striking the affidavit is that he believes Radtke is lying about the lack of an insect problem in the institution.  I will deny this motion because the court cannot strike an affidavit on a party's unsubstantiated say-so.  The proper way for plaintiff to dispute Radtke's affidavit is to file his own evidentiary materials in support of his motion.

Turning to plaintiff's materials in support of his motion, I note that they are meagre. Plaintiff's findings of fact take up only one page and consist of a list of the problems that he has allegedly encountered in the DS-1 unit.  In his affidavit, he does not restate his proposed findings of fact but merely states, "All statements given in brief in support of preliminary injunction relief, and proposed finding of facts are true to the best of my/Gillis' knowledge."

5

He states more facts in his brief.  These submissions do not comply with the court's procedures for injunctive relief.  However, I see no reason to ask him to fix these problems, because even assuming that his proposed findings are true, I conclude that plaintiff fails to show some likelihood of success on the merits of his conditions of confinement claim.  For the sole purpose of deciding this motion, I find from the parties' submissions that the following facts are material and undisputed.

1. <u>Undisputed facts</u>

Inmates in the DS-1 unit are allowed only two showers and two exchanges of underwear a week.  Plaintiff has sores on his penis, buttocks and surrounding areas from the lack of underwear.

Pipes in the unit break on a regular basis.  Also, prisoners routinely flood their cells.  When pipes break or inmates flood their cells, the affected inmates are removed from their cells and placed in clean cells.

Plaintiff has been bitten by the bugs that are crawling "all over the building."  The unit has very old mattresses, some of which have been infested by bugs, although prison staff have started to remove some of them.  The unit has a "mold/fungi/spore problem" and it has never been inspected by a mold/fungi/spore expert.  The unit's windows allow "a lot" of cold air to come in.  There are sewer gasses coming out of plaintiff's sink.

6

Dylon Radtke, a Supervising Officer 2 at the Columbia Correctional Institution, is responsible for assisting in the coordination of all security operations at the institution and participates in the development and implementation of overall institution goals, policies and procedures.  Radtke is not aware of a bug problem, a mold, fungus or spore problem, a problem with cold air coming into the unit or sewer gas coming out of sinks.  However, if unit staff became aware of these problems or inmates notified inmate staff about them, maintenance would take care of the problem.  In the past, plaintiff made a complaint about mold in the shower, but an inspection found none.  Regarding the cold air problem, the ventilation system is monitored by a computerized program, which would activate the heating system if cold air leaking through the windows made the cells cooler.  In addition, inmates are provided with a blanket and another may be provided to an inmate who requests one, depending on their status.

There are no tables or desks inside the cells, so there is no place to set down towels or washcloths, and plaintiff must eat and write on the floor.  There is "a lot" of chipping paint around plaintiff's food slot.  The maintenance crew has been called to fix chipping paint in cells and they have corrected those problems promptly.  Prisoners in the unit are not allowed to shave.  Inmates in DS-1 are not allowed razors but they can receive haircuts and a facial hair trim twice a month.

Plaintiff's lungs hurt, he feels short of breath and he coughs up liquid when housed

7

in the unit.  Also, he continues to suffer from colds, sore throats, ear infections, high blood pressure, a thyroid condition and is very sensitive to allergens, smells, dust and mold.  Other prisoners have been exposed to these conditions.  The conditions "are so bad that [they cause] depression, suicidal thoughts and people to fall apart."

2.  Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide prisoners "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The conditions must not involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  However, "it is obduracy and wantonness, not inadvertence or error in good faith," that characterize the conduct prohibited by the cruel and unusual punishments clause. Whitley v. Albers, 475 U.S. 312, 319 (1986).  Therefore, to demonstrate that prison conditions violate the Eighth Amendment, plaintiff must prove facts that satisfy a test involving both an objective and subjective component.  Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994).

The objective analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," Farmer, 511 U.S. at 834, or "exceed contemporary bounds of

decency of a mature, civilized society." <u>Lunsford</u>, 17 F.3d at 1579. If the plaintiff establishes that the conditions were sufficiently serious, the subjective component requires proof that the defendants acted with deliberate indifference to a risk of serious harm to plaintiff. <u>Id.</u> "Deliberate indifference" means that the defendant knew that the plaintiff faced a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable measures to address it. <u>Farmer</u>, 511 U.S. at 847. Thus, it is not enough for plaintiff to prove that a defendant acted negligently or should have known of the risk. <u>Pierson v. Hartley</u>, 391 F.3d 898 (7th Cir. 2004). He must show that the official received information from which an inference could be drawn that a substantial risk existed and that the official actually drew the inference. <u>Id</u>. at 902.

It is highly questionable whether plaintiff has alleged conditions resulting in "the denial of the minimal civilized measure of life's necessities." Certain of his complaints, such as the two-shower, two changes of underwear a week policy, the lack of desks and tables in the cell or not being allowed to shave, relate to conditions that do not violate the Eighth Amendment. <u>E.g.</u> <u>Farmer</u>, 511 U.S. at 833-34 (prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment); <u>Davenport v. DeRobertis</u>, 844 F.2d 1310, 1316 (7th Cir. 1988) ("There would be a special irony in requiring the State of Illinois to provide . . . three showers a week, when many law-abiding poor people in dilapidated public housing projects

9

do not have working showers." )

Some of plaintiff's other concerns, such as the presence of mold and infestation of biting insects, may be more serious.  However, even assuming that these conditions denied him of the minimal civilized measure of life's necessities, he fails to show some likelihood of success on the merits of his conditions of confinement claim because he fails to show that defendants were deliberately indifferent to his plight.  Plaintiff has produced no evidence suggesting that any of the defendants knew of the alleged problems and then chose not to address them.  Evidence submitted by defendants shows that when plaintiff or other inmates have complained about some of the problems he describes, prison staff have looked promptly into them.  Without some proposed findings of fact indicating that plaintiff has complained to prison staff about these problems and that they have failed to respond, he cannot prevail on his conditions of confinement claim.  Accordingly, I will deny plaintiff's motion for preliminary injunctive relief. As this case proceeds to the summary judgment stage, plaintiff should take note of what he needs to prove in order to avoid dismissal of his case.

D.  Motion for Inspection of DS-1 Unit

Next, plaintiff has filed a motion asking the court to appoint an independent inspector to inspect the DS-1 unit for mold, fungi and insects.  Plaintiff misapprehends the role of the court in this litigation.  It is plaintiff's job to prove that the conditions of

10

confinement violate his Eighth Amendment rights; the court cannot prove his case for him. Accordingly, I will deny this motion.

### E. Motion for Clarification Regarding Medical Authorization

Plaintiff has filed a motion asking the court whether he is required to sign an authorization for the disclosure of his medical records. Defendants state that they need access to these records because plaintiff alleges physical injuries from the conditions of his confinement and seeks compensatory and punitive damages in this case. I agree that some of plaintiff's medical records will be relevant to issues raised by plaintiff in this lawsuit, so defendants are entitled to these records in order to prepare their defense.

Plaintiff will not be forced to sign an authorization form, but there are consequences if he chooses not to. If he is unwilling to consent to authorize any disclosures in this case, then this lawsuit will likely be dismissed because the defendants cannot defend themselves without access to plaintiff's records.

On the other hand, defendants are not entitled to medical records that are irrelevant to the issues in this case. The stock authorization form used by defendants is oftentimes unnecessarily broad, which seems to be the case here. It authorizes the disclosure of "all records, reports, documents . . ." specifically including "[c]ounseling and/or psychiatric records, . . . alcohol and/or drug treatment records, and HIV and/or AIDS test results." It

11

is unclear how these types of records would be relevant to the injuries alleged by plaintiff. I encourage defendants to modify their authorization form to limit the scope of release to the injuries relevant in the case.  Should the parties continue to dispute what information needs to be released, defendants should file a motion to compel authorization and the parties can explain what records are in dispute.

ORDER

IT IS ORDERED that

1.  Plaintiff Nathan Gillis's motion for entry of default against defendants, dkt. #35, is DENIED.

2.  Plaintiff's motion for reconsideration of the court's February 11, 2010 order, dkt. #29, is GRANTED.  Plaintiff is granted leave to proceed on his retaliation claim against defendants Capt. Ashworth, G. Grams and Rick Raemisch.

3.  Plaintiff's motion to strike the affidavit of Dylon Radtke, dkt. #45, is DENIED.

4.  Plaintiff's motion for preliminary injunctive relief, dkt. #25, is DENIED.

5.  Plaintiff's motion for an independent inspection of the DS-1 unit, dkt. #34, is DENIED.

6.  Plaintiff's motion for clarification regarding the authorization for release of his

12

medical records, dkt. #33, is GRANTED as discussed in the opinion above.

Entered this 26th day of April, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

13