IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATHAN GILLIS,

      Plaintiff,

   v.

G. GRAMS, CAPT. ASHWORTH,
SGT. MORRISON, LT. JOANNE LANE,
RICK RAEMISCH and JOHN DOES 1-5,

      Defendants.

OPINION and ORDER

09-cv-245-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   In this case, plaintiff Nathan Gillis, a prisoner at the Columbia Correctional Institution, was allowed to proceed on claims that (1) defendant Anthony Ashworth violated his right to due process by filing a false conduct report against him; (2) defendants Greg Grams and Rick Raemisch violated his rights to due process by ignoring his complaints about Ashworth; (3) defendant Joanne Lane violated his right to due process by holding an unfair disciplinary hearing; (4) defendants Grams and Sgt. Morrison subjected him to inhumane conditions of confinement in the DS-1 unit in violation of the Eighth Amendment; and (5) John Doe defendants destroyed plaintiff's religious items in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act.

1

In an order entered on July 28, 2010, I denied defendants' motion for summary judgment regarding exhaustion on plaintiff's claim that guards rolled up a wet bath towel with his prayer rugs and Qur'an and gave plaintiff a chance to further explain his claim that prison staff threw away a set of his Qur'an and tore the back off another Qur'an.  Also, I denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment on plaintiff's due process claims against defendants Lane and Raemisch, but gave plaintiff another chance to file proposed findings of fact regarding his due process claims against defendants Ashworth and Grams.

Now plaintiff has submitted new proposed findings of fact as well as further information on his claim regarding the destruction of his religious items.  Also, he has filed several motions for reconsideration or clarification of the July 28, 2010 order and a motion for appointment of counsel.  After considering plaintiff's filings, I will grant defendants' motion for summary judgment for plaintiff's failure to exhaust his claims that guards threw away a set of plaintiff's Qur'an and religious books and tore the back off another Qur'an. I will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment on plaintiff's claim that defendant Grams ignored his complaints, but I will deny both parties' motions for summary judgment on plaintiff's claim against defendant Ashworth.  I will deny plaintiff's motions for reconsideration, but I will grant his request to clarify parts of the July 28, 2010 order.  Finally, I will deny plaintiff's motion for

2

appointment of counsel and request that defendants submit the identities of the John Doe defendants to plaintiff and the court.

OPINION

A. Defendants' Motion for Summary Judgment - Failure to Exhaust

Defendants have filed a motion for partial summary judgment, arguing that plaintiff has failed to exhaust his claims that John Doe defendants destroyed his religious items in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act.  In particular, plaintiff alleges that on April 29, 2009, unnamed guards threw away a set of plaintiff's Qur'an and religious books and tore the back off another Qur'an.  In response to defendants' proposed finding of fact that he has not submitted inmate complaints or appeals exhausting these claims, plaintiff cites three inmate complaints that he believes proves that he has exhausted: CCI-2009-117 (this appears to be a typographical error by plaintiff; the documentation provided by defendants shows that the proper numbering is CCI-2009-177), CCI-2009-2185 and CCI-2009-11966.  In the court's July 28, 2010 order, I noted that the timing of plaintiff's claims and his inmate complaints was unclear:

> In inmate complaint CCI-2009-177, plaintiff alleges that staff "threw away [his] Islamic materials," and in complaint CCI-2009-2185, plaintiff alleges that staff lost religious property and books that he was going to donate to the Islamic Center in Madison, Wisconsin.  However, CCI-2009-177 was submitted on January 2, 2009 and CCI-2009-2185 was submitted on January

3

26, 2009, so they could not have been referring to events that took place on April 29, 2009.

In an affidavit, plaintiff appears to clarify this discrepancy by stating that after he filed CCI-2009-177, he was given money for the lost Qur'an (again, plaintiff confuses the issue somewhat. The result of his filing CCI-2009-2185 was that he was reimbursed $57 for the lost materials; he was not reimbursed under CCI-2009-177). Then, after he bought a new Qur'an, a guard ripped the back off of it. At first glance, the timing of this account seems to dispute his amended complaint, which states: "Guards threw a set of Qurans/religious books away and tore the back off another Quran holy book/religious — date 4-29-09." An alternate reading of the complaint would be that plaintiff's reference to April 29, 2009 was a reference to the date a guard ripped the cover off of his second Quran rather that the date his first set was lost, in which case it is possible that he has exhausted his claim about his first Quran set's being lost.

Because of the confusion over the timing of these events, I gave plaintiff an opportunity to explain when these events occurred and gave defendants a chance to respond. Plaintiff responds by stating that "these events occurred between March 25, 2009, and April 25, 2009." Because these events occurred in March and April 2009, months after plaintiff filed inmate complaints CCI-2009-177 and CCI-2009-2185, those complaints could not have been used to exhaust his claims. Nor can plaintiff use inmate complaint CCI-2009-11966 as proof of exhaustion because that complaint did not mention the claims at issue here. (Rather, that inmate complaint discussed plaintiff's claim that on June 5, 2009, guards rolled up a wet bath towel with his prayer rugs and Qur'an. In the July 28, 2010 order, I denied defendants' motion for summary judgment regarding that claim.) Thus, plaintiff fails to submit evidence showing that he has exhausted the administrative remedies for his claims

4

that guards threw away a set of his Qur'an and religious books and tore the back off another Qur'an. Accordingly, I will grant defendants' motion for summary judgment on these claims.

## B. Motions for Summary Judgment

On May 18, 2010, plaintiff filed a motion for summary judgment on his due process claims that (1) defendant Ashworth filed a false conduct report against him; (2) defendants Grams and Raemisch ignored his complaints; and (3) defendant Lane held an unfair disciplinary hearing. However, he failed to cite admissible evidence supporting his findings of fact or responses to defendants' proposed findings. Defendants argued that they should be granted summary judgment on each of plaintiff's claims based on their proposed findings of fact. In the court's July 28, 2010 order, I granted summary judgment in favor of defendants on the claims against Raemisch and Lane. I stayed a decision on defendants' request for summary judgment on the claims against Ashworth and Grams because plaintiff's unsworn statements, if properly sworn, could have raised disputed issues of material fact. I gave plaintiff another chance to file proposed findings of fact that complied with this court's procedures for briefing summary judgment motions.

(Also, in the July 28, 2010 order, I noted that "at this point plaintiff can only hope to dispute defendants' proposed findings rather than obtain summary judgment for himself," thus implicitly denying plaintiff's motion for summary judgment on his due process claims.

5

However, because the July 28 order does not explicitly state that plaintiff's motion for summary judgment on his claims against Ashworth and Grams was denied, I will address plaintiff's motion in this order.)

Now plaintiff has submitted two sets of proposed findings of fact as well as his own affidavits, properly sworn. From plaintiff's new submissions, as well as defendants' original proposed findings of fact, I find the following facts to be material.

1. <u>Undisputed facts</u>

Plaintiff Nathan Gillis is an inmate at the Columbia Correctional Institution. Defendant Gregory Grams is Warden, Columbia Correctional Institution. Captain Anthony Ashworth is a corrections unit supervisor.

Plaintiff witnessed a March 6, 2009, incident involving inmate Hakim Naseer and Officer Neumaier, in which he states that he saw Neumaier "sucker punch" Naseer with a closed fist and then hit him in the head with his forearm and elbow, after Naseer made derogatory comments about Neumaier's wife. Plaintiff wrote three letters, one to Secretary Rick Raemisch, one to Grams and one to private individuals Peg Swan and Ron Solinger about the incident. In response to the allegations of Officer Neumaier's behavior raised in an offender complaint and in the letters written by plaintiff, an investigation was commenced.

Defendant Ashworth was responsible for conducting an internal investigation concerning the incident with inmate Naseer and Officer Neumaier.  The investigation was conducted in cooperation with the Columbia County Sheriff's Department.  Ashworth reviewed copies of the sheriff's report, conduct report, incident reports and letters written by plaintiff.  In his letter to Raemisch, plaintiff described officer Brian S. Neumaier "sucker punching" inmate Naseer, "once with a closed fist" and three additional times "with his forearm to the back of the head."  In his letter to defendant Grams, plaintiff stated, "I witnessed a guard/Neumaier sucker punch, using closed fist, forearm, hit prisoner Hakim Naseer #416476, in his face three times."  In his letter to Peg Swan and Ron Solinger, plaintiff stated, "Hakim Naseer was attacked by guard by the name of [Neumaier], for no reason."  It also states that "Naseer suffered multiple injuries" and that "it was horrible how this guard beat Naseer."

Defendant Ashworth noted that the other witnesses characterized the incident differently in their interviews with the sheriff's department.  Officer Neumaier stated that he was escorting Naseer to his cell when Naseer made disparaging remarks about Neumaier's wife and twice made a "hocking" noise by clearing his throat and turned his head toward Neumaier, as if to spit on him.  Neumaier stated that he forced Naseer into the wall and applied a forearm to the back or shoulders to restrain him after having been warned not to "hock" or spit at him.  He stated also that when he pushed Naseer into the wall, his head hit

7

the wall, giving him a laceration over his left eye.

Witness inmate Anthony D. Anderson stated that Neumaier pushed Naseer into the wall after he made derogatory comments and twice made "hocking" noises. Anderson saw a cut above Naseer's eye and blood on the wall following the incident. Witness inmate Manuel R. Williams gave the same version of events as Anderson, but added that he saw Neumaier pull Naseer's head back and push his head into the cell door three times.

From his review of the evidence, Ashworth concluded that none of the other witnesses reported that Neumaier struck Naseer in the face, punched him or otherwise struck him with a closed fist. Ashworth stated that there was no witness other than plaintiff who claimed that the use of force by Neumaier was unwarranted or improper. Because an internal investigation and witness accounts of the March 6 incident contradicted statements made by plaintiff in his letters to Grams and Raemisch, Ashworth issued plaintiff Conduct Report #2035055 on April 9, 2009, for lying about staff in violation of DOC §303.271.

On April 27, 2009, the hearing regarding conduct report #2035055 was conducted by defendant Lane and Unit Manager James Spangberg. Plaintiff was offered the opportunity to attend his hearing and refused. To Lane's knowledge, plaintiff was given notice of his hearing, the witness request form, and the opportunity to attend his hearing, but failed to return the witness request form and refused to attend his hearing. Plaintiff was found guilty of lying to staff and was sentenced to 240 days of program segregation.

8

Plaintiff appealed the outcome of the hearing to defendant Grams on April 30, 2009. Grams affirmed the hearing committee's decision on June 25, 2009. Grams concluded that no evidence produced by the internal investigation supported the allegations contained in plaintiff's letters. Grams found no support for a due process violation because plaintiff refused to attend his hearing and did not submit the witness request form.

2. Disputed facts

The parties dispute what occurred between issuance of the conduct report and the hearing. Plaintiff states that he never received notice of the hearing date. Also, he made numerous requests to the security office to have defendants Grams and Raemisch testify, but never received a response.

Defendants state as follows: a written notice of the disciplinary charges, hearing procedures and prisoner's rights was offered to plaintiff on April 10, 2009, but he refused to sign the hearing notice. The hearing notice and rights within were read to him. Advocate Mary Leiser visited plaintiff on April 14, 2009, offered him a witness request form and informed him it must be completed within two days and returned to the security office. On April 14, Leiser informed plaintiff that his hearing was tentatively scheduled for April 27, 2009. Plaintiff did not complete and return the witness request form to the security office as required by DOC § 303.81.

3. <u>Discussion</u>

a.  Defendant Ashworth

In the court's February 11, 2010 screening order, I described the contours of plaintiff's claim against defendant Ashworth:

> Usually, so long as an inmate's disciplinary hearing itself provides procedural due process, an allegation that a prison guard offered false evidence or false reports in order to implicate an inmate in a disciplinary infraction does not state a claim for which relief can be granted. <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1141 (7th Cir. 1984).  However, in the present case plaintiff alleges that he did not receive procedural due process at his disciplinary proceeding.

Thus, in order for plaintiff to prevail on his due process claim against Ashworth, he must prove that he was issued a false conduct report and that he did not receive procedural due process at his disciplinary proceeding.  Unfortunately for plaintiff, I must deny his motion for summary judgment on this claim for several reasons.

First, it is disputed whether plaintiff received procedural due process.  Although plaintiff states that he never received notice of his hearing and was not allowed to call witnesses, defendants provide testimony stating that he received notice of the hearing date and that he refused to attend the hearing or submit a witness request form.

Next, plaintiff fails to show that his 240-day sentence of segregation in DS-1 qualifies as a "liberty interest" for purposes of <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995).  To show that he was deprived of a liberty interest, plaintiff has to show that his placement in

segregation subjected him to conditions of confinement that constituted a "atypical and significant" hardship.  As I explained in the July 28, 2010 order, neither party submitted evidence about the conditions of confinement in the DS-1 unit.

Finally, it is unclear whether defendant Ashworth's actions constitute issuing a "false conduct report" within the meaning of <u>Hanrahan</u>.  In that case, an inmate asserted that his due process rights were violated when a prison guard planted false evidence and issued a disciplinary citation based on that false evidence.  <u>Hanrahan</u>, 747 F.2d at 1139-40.  Other cases setting out similar due process claims describe intentional or fraudulent conduct on the part of prison officials.  <u>E.g.</u>, <u>Surprenant v. Rivas</u>, 424 F.3d 5, 14 (1st Cir. 2005) (plaintiff claimed that prison guard fabricated an "officer in danger" alert about being threatened by inmates); <u>McKinney v. Meese</u>, 831 F.2d 728, 733 (7th Cir. 1987) (plaintiff claimed that prison guard issued false disciplinary report to one member of gang in retaliation for the acts of another member).  In the present case, Ashworth did not observe the incident between Neumaier and Naseer first-hand.   Rather, he relied on the testimony of plaintiff, Neumaier and inmates Anderson and Williams in concluding that plaintiff made false statements about Neumaier.  Thus, one view of the evidence is that Ashworth simply considered the other witnesses' testimony more credible that plaintiff's rather than intentionally fabricating any evidence.  A different view would be that Ashworth papered over discrepancies in the other inmate witnesses' versions of the events in order to claim that they corroborated

11

Neumaier's—for instance, inmate Williams said that he saw Neumaier pull Naseer's head back and push his head into the cell door three times, testimony that would seem to corroborate plaintiff's belief that Neumaier used excessive force.

Unfortunately, neither side discusses <u>Hanrahan</u>-type due process claims in their briefs. Instead, both parties appear to be laboring under the assumption that plaintiff is bringing a retaliation claim against Ashworth, but as I discuss further below, plaintiff was denied leave to proceed on retaliation claims against defendants.   Even though defendants request summary judgment for all claims raised by plaintiff in his motion for summary judgment, I conclude that it would be inappropriate to grant summary judgment in favor of defendants on the due process claim against Ashworth when both sides seem to misunderstand the nature of the claim in their briefs.   Defendants remain free to file their own motion for summary judgment regarding this claim as well as the other claims not already dismissed in this order.

b. Defendant Grams

Next, plaintiff claims that defendant Grams ignored his complaints about Ashworth. In the July 28, 2010 order, I stated the following about this claim:

> Defendants point out that under <u>George v. Smith</u>, 507 F.3d 605, 609 (7th Cir. 2007), "ruling against a prisoner on an administrative complaint does not cause or contribute to the violation" and that only in an extreme case, such as

12

an examiner "sen[ding] each grievance to the shredder," could an examiner be
held liable.  <u>Burks v. Raemisch</u>, 555 F.3d 592, 595 (7th Cir. 2009).
Defendants have submitted proposed findings of fact indicating that Grams
denied plaintiff's appeal after careful consideration.  However, as with his
claim against defendant Ashworth, plaintiff continues to assert, albeit not
under penalty of perjury, that Grams maliciously denied his appeal.  He states
that Grams told him "to mind his own business."  I will give plaintiff another
opportunity to submit proper proposed findings of fact explaining Grams's
actions.

In his new submissions, plaintiff does not include a proposed finding that Grams told him

"to mind his own business" or any finding indicating that Grams acted maliciously in

denying his appeal.  Because Grams cannot be held liable merely for ruling against plaintiff

on his inmate complaint, I will deny plaintiff's motion for summary judgment on this claim

and grant defendants' motion for summary judgment.


### C. Plaintiff's Motions for Reconsideration

Plaintiff seeks reconsideration of portions of the court's July 28, 2010 order.  I will

address these issues in turn.


### 1. Celotex standard

Plaintiff requests that the court grant his motion for summary judgment, citing

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), for the proposition that "[d]efendants

13

have failed to make a showing on an essential element of their case . . . which they had the burden to prove." Even looking past the fact that plaintiff completely fails to develop his argument by explaining which of his claims he is talking about and what issues defendants have failed to prove, plaintiff misunderstands the language from <u>Celotex</u>. This standard generally comes into play when a *defendant* moves for summary judgment and argues that the plaintiff will not be able to submit evidence supporting its claims. In the present case, *plaintiff* moved for summary judgment, but this does not mean that he can be granted summary judgment under <u>Celotex</u> by saying that defendants failed to prove that they did not violate his rights. Rather, plaintiff retained the burden of submitting evidence proving that defendants violated his rights and failed to carry this burden. Therefore, I will deny this motion for reconsideration.

2.  <u>Defendant Raemisch</u>

Plaintiff argues that I erred in granting summary judgment to defendants on his claim against defendant Rick Raemisch. He states that Raemisch "participated in retaliation by allowing a false conduct report." However, as I discuss elsewhere in this opinion, plaintiff was never allowed to proceed on a retaliation claim against Raemisch. Plaintiff was allowed to proceed on a due process claim against Raemisch for ignoring his complaints, but he does not provide any new evidence or argument disputing the portion of the July 28, 2010 order

granting summary judgment to defendants on this claim.  Accordingly, I will deny plaintiff's

motion for reconsideration on this issue.

3.  <u>Due process claim against defendant Lane</u>

Plaintiff next seeks reconsideration of the portion of the July 28, 2010 order granting

summary judgment to defendants on his due process claim against defendant Joanne Lane

for holding an unfair disciplinary hearing.  In the July 28 order I discussed this claim as

follows:

> Even if I were to credit plaintiff's unsworn declarations in his proposed
> findings of fact and responses to defendants' proposed findings of fact that he
> was not given notice of the hearing date or given an opportunity to appear or
> call witnesses, he does not include any assertions that defendant Lane was the
> one responsible for these problems.  Liability under § 1983 must be based on
> a defendant's personal involvement in the constitutional violation.  <u>Gentry v.
> Duckworth</u>, 65 F.3d 555, 561 (7th Cir.1995).  Even crediting plaintiff's
> unsworn statements that advocate Mary Leiser and the prison's security office
> failed to inform him of his rights, the undisputed facts show that defendant
> Lane operated under the belief that plaintiff was given the opportunity to
> appear at the hearing and call witnesses but refused.  Because plaintiff has
> failed to present any evidence showing that defendant Lane was personally
> involved in the alleged deprivation of his due process rights, I will deny
> plaintiff's motion for summary judgment on the claim and grant defendants'.

This analysis remains valid even though plaintiff has now supplanted his unsworn

declarations about the disciplinary proceedings with his sworn testimony that he was not

given notice of the hearing date or given an opportunity to appear or call witnesses; to avoid

15

summary judgment, plaintiff needs to show that defendant Lane was personally involved in the constitutional violation.

Now plaintiff argues that Lane participated in violating his due process rights because she convicted him on a conduct report that was "extremely unclear and ambiguous."  He states, "The conduct report [plaintiff] was given only summarized and made suggestions, but did not define what [he] had lied about; in addition 99.9% of the evidence used to draft the conduct report was confidential/secret.  Thus [plaintiff] was not allowed those addition[al] materials to this date; Defendants submitted these materials to this court under seal."

The record does not support plaintiff's argument that the conduct report is insufficiently clear.  The conduct report states as follows:

> During the first week of March 2009 Inmate Nathan Gillis #273445 wrote 2 letters regarding a use of force incident involving Inmate Hakim Naseer. . . . In both of these letters Inmate Gillis alleged that Correctional Officer Neumaier acted inappropriately in this use of force incident. [In the letters plaintiff stated that] "Mr. Neumaier started punching prisoner H. Naseer in front of my cell" [and that] "I witnessed a guard/Neumaier sucker punch, using closed fist, forearm, hit prisoner Hakim Naseer #416476, in his face three times."  This incident was investigated and it is evident based on the witness information and supporting reports that Officer Neumaier did not punch Inmate Naseer.  All witness information corroborates Officer Neumaier's version of events including prior to and post incident.  Most importantly witnesses corroborate Officer Neumaier's declaration that he did not strike Nasser.

The conduct report clearly explains what plaintiff was accused of lying about, which was that Neumaier used inappropriate force by punching Naseer.

16

As for plaintiff's argument that the evidence underlying the conduct report was kept confidential, he has waived this argument because he waited until his motion for reconsideration to raise it.   Mungo v. Taylor, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration . . . are generally deemed to be waived.") In any case, plaintiff does not develop his argument sufficiently to explain what information he lacked.  Accordingly, I will deny plaintiff's motion for reconsideration regarding his claim against defendant Lane.  (Also, I note that plaintiff believes that there are documents used in formulating the conduct report that continue to be withheld from him, but this does not appear to be the case.  He seems to be referring to the attachments to defendant Ashworth's affidavit, dkt. #120.  However, none of those documents—his letters to defendants Grams and Raemisch, the Columbia County Sheriff Incident Report and the conduct report—are being withheld from him.  They are all documents that plaintiff has either authored or that he has already provided to the court himself.)

### D. Plaintiff's Motions for Clarification

Plaintiff has filed motions seeking further clarification about two issues.  Technically, these motions will be "granted" to the extent that I will oblige plaintiff by providing further explanation about these issues and clarifying what claims remain in this litigation.  However,

plaintiff should not confuse my granting of these motions with the idea that I necessarily agree with his interpretation of the issues stated in his motions.  He should read the discussion below carefully so that he fully understands how this case will proceed.

1. Due process claims

Plaintiff asks for clarification about due process claims, asking whether language in the July 28, 2010 order means that he has "lost this liberty interest issue forever."  In the July 28 order, I stated the following about plaintiff's due process claims:

> To state a procedural due process claim, a prisoner must allege facts suggesting that he was deprived of a "liberty interest" and that this deprivation took place without the procedural safeguards necessary to satisfy due process.  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).
>    Neither party addresses the critical issue whether plaintiff's 240-day sentence of segregation in DS-1 qualifies as a "liberty interest" for purposes of Sandin.  Without any proposed findings of fact regarding the conditions of the DS-1 unit, plaintiff cannot be granted summary judgment on this claim.

This language explains that in order for plaintiff to prevail on his due process claims, he has to prove both that he was deprived of a liberty interest and that the deprivation took place without the procedural safeguards necessary to satisfy due process.  To show that he was deprived of a liberty interest, plaintiff has to show that his placement in segregation subjected him to conditions of confinement that constituted a "atypical and significant" hardship.  One of the reasons plaintiff's motion for summary judgment was denied is because

he failed to support his motion for summary judgment with evidence of the conditions in the DS-1 unit.  The denial of his motion for summary judgment does not mean that he has "lost this liberty interest issue forever."   However, defendants have been granted summary judgment on most of his due process claims for other reasons.  The only due process claim that has survived summary judgment is his claim against defendant Ashworth.

2. Retaliation claims

Plaintiff seeks clarification regarding retaliation claims on which he believes he has been allowed to proceed.  He states that since he was allowed to proceed on these claims, "[t]here has been no mention of these claims" in subsequent orders.  However, plaintiff is incorrect about having been allowed to proceed on retaliation claims.  In the February 11, 2010 screening order, I considered plaintiff's claims that then-defendant M. Marshel retaliated against him by denying him access to attorneys, defendant Ashworth retaliated against him by giving him a false conduct report and that defendants Grams and Raemisch retaliated against him by ignoring his complaints.  I concluded that plaintiff failed to state retaliation claims against these defendants because he failed to provide any reason for the alleged retaliation that was "plausible on its face" under Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  However, in that order I allowed  allow plaintiff to proceed on claims that defendants Ashworth, Grams and Raemisch violated his right to due process by issuing him

19

a false conduct report and ignoring his complaints (although only his claim against Ashworth has survived summary judgment).

3. Summary

It is understandable that plaintiff asks questions about which of his claims are still alive because he has brought several claims against multiple defendants, and it can be difficult to keep everything straight given the numerous motions and orders in this case. Accordingly, it may be useful to list which claims are still part of this case:

• Plaintiff's claim that defendant Ashworth violated his right to due process by filing a false conduct report against him.

• Plaintiff's claim that defendants Grams and Morrison subjected him to inhumane conditions of confinement in the DS-1 unit in violation of the Eighth Amendment.

• Plaintiff's claim that John Doe defendants destroyed his religious items in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act by rolling up a wet bath towel with his prayer rugs and Qur'an.

E. Plaintiff's Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel.  As a civil litigant, plaintiff has neither a constitutional nor statutory right to counsel, Forbes v. Edgar, 112 F.3d 262,

20

264 (7th Cir. 1997), but "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). In the present case, it appears that plaintiff can afford counsel.  Plaintiff paid the $350 filing fee in this case and is not proceeding in forma pauperis.  Accordingly, I will deny plaintiff's motion.


F. Identifying John Doe Defendants

There is a final issue that needs to be resolved.  Because plaintiff is proceeding on his claim that John Doe defendants destroyed his religious items by rolling up a wet bath towel with his prayer rugs and Qur'an, plaintiff will have to identify the Doe defendants.  Plaintiff states that this incident occurred on June 5, 2009, during a search of plaintiff's cell.  Because defendants are in better position to identify the prison staff members who took part in this search, they should submit to plaintiff and the court the identities of these staff members by October 18, 2010.  Once the court receives this information, the caption will be amended accordingly and those defendants will be served.


ORDER

IT IS ORDERED that

1.  Defendants' motion for summary judgment for plaintiff's failure to exhaust his claims that guards threw away a set of plaintiff's Qur'an and religious books and tore the

back off another Qur'an, dkt. #59, is GRANTED.

2.  Plaintiff's motion for summary judgment, dkt. #64 is DENIED and defendants' motion for summary judgment, dkt. #112, is DENIED on plaintiff's claim that defendant Ashworth filed a false conduct report against him.

3.  Plaintiff's motion for summary judgment, dkt. #64 is DENIED and defendants' motion for summary judgment, dkt. #112, is GRANTED on plaintiff's claim that defendant Grams ignored his complaints.

4.  Plaintiff's motions for reconsideration of portions of the court's July 28, 2010 order, dkts. ##151, 170, are DENIED.

5.  Plaintiff's motions for clarification, dkt. ##161, 171, 172, are GRANTED as discussed in the order above.

6.  Plaintiff's motion for appointment of counsel, dkt. #174, is DENIED.

7.  Defendants will have until October 18, 2010 to submit the identities of the John Doe defendants to plaintiff and the court.

Entered this 4th day of October, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

22